UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DENNIS LEE TAPP | ) | CASE NO. 04-34647 |
| | ) | |
| Debtor | ) | |
| | ) | |
| B.S. RAWLINGS | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP NO.  04-3342 |
| | ) | |
| DENNIS LEE TAPP | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM-OPINION**

This matter came before the Court for trial on the Complaint of Plaintiff Beverly S. Rawlings ("Rawlings") objecting to the discharge of Defendant/Debtor Dennis Lee Tapp ("Debtor") on September 28, 2005 and October 4, 2005. The parties submitted post-trial briefs and the Court took the matter under submission. The Court considered the testimony at trial, the documentary evidence presented, the written submissions of the parties and the arguments of counsel. The Court finds in favor of the Debtor on the Plaintiff's Complaint. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

Debtor is an interior designer and the sole owner of Dennis Tapp Interiors, LLC ("DTI"). Debtor's business consists of providing designer services and the sale of home furnishings. Debtor and Rawlings have done business together for approximately 20 years.

Rawlings hired Debtor to assist her in furnishing two homes under construction. One of the homes was located in Nashville, Tennessee and the other was located in Crestwood, Kentucky. With Debtor's assistance Rawlings would pick out items and Debtor would then order the item. Debtor would then send an invoice for the item and Rawlings would pay the invoice by check.

During the course of providing his services on the two homes, Debtor informed Rawlings that he could take her to the market in High Point, North Carolina, where decorators and designers can purchase home furnishings at a deep discount. Debtor agreed to take Rawlings to High Point, North Carolina to pick out items for the homes. Debtor and Rawlings agreed that Debtor would charge her 40% mark- up over the wholesale price on the items purchased at the market. The 40% mark-up figure represented a significant savings for Rawlings. Debtor proposed to make additional money on the project by providing Rawlings with faux finishings on her wall coverings, draperies and accessories. Tapp was also to be paid $100 per hour for his services.

Rawlings, Tapp and Tapp's assistant, Andrea Wagner, traveled to High Point, North Carolina in Rawlings' private jet. Rawlings paid for all of Tapp and Wagner's expenses on the trip. As Rawlings selected items, Wagner photographed the item and cataloged the item on a list. Upon returning to Louisville, Tapp invoiced Rawlings for the items ordered in High Point as they were received. The items were stored in Tapp's warehouse. Rawlings had to store the items until the houses were completed. Rawlings paid all of the invoices as well as storage fees. Rawlings testified

that she paid Tapp a total of $350,000 as a deposit to purchase furniture. This figure included the 100% wholesale cost of the item, plus the agreed upon 40% mark-up on the items selected.

In February 2004, Rawlings told Tapp she was ready to begin moving items out of storage and into the house in Nashville. Rawlings hired movers to load and unload the furniture. Tapp, Wagner and two other Tapp employees went to Nashville to assist. After all of the items had been unloaded, Rawlings noticed that a few items that had been ordered and paid for, were missing.

Rawlings returned to Louisville and requested access to the furniture she ordered that was stored in Tapp's warehouse. Wagner told her she could not go into the warehouse at that time because it was a mess. Rawlings testified that she contacted Wagner several times and requested access to the warehouse. On each occasion, Wagner denied her request claiming that Tapp had the keys with him in Florida or gave her some other excuse.

Rawlings received a bill from Tapp for $8,000 for time spent by Tapp and his two assistants in Nashville. While Rawlings had previously agreed to pay for Tapp's time at $100 per hour, she claimed there was no agreement for her to pay for Wagner and the other assistant's time at $50 per hour. Rawlings contacted Tapp and informed him she would not pay the invoice because it was too expensive.

On March 18, 2004, Rawlings sent Tapp a letter stating that she no longer required his services and demanded access to all furniture and furnishings that she had paid for on March 24, 2004 at 10:00 a.m. Rawlings did not get access to the warehouse on March 24, 2004.

On April 2, 2004, Tapp sent Rawlings a letter in which he demanded payment of an additional $391,665 to deliver the rest of her furniture. Tapp contends that since he was giving Rawlings a discount on the mark-up of the furniture, he had to make extra money on the project by

3

billing for his time and his assistant's time. When Rawlings refused to pay the invoices for the hourly rate, Tapp felt he had to bill Rawlings for the full amount of the mark-up provided to all of his other customers, rather than the 40% discount he had given her.

Rawlings filed a Complaint against Tapp and DTI in Jefferson Circuit Court to obtain access to her furniture. In that action, the Court entered an Order on March 12, 2004, ordering the parties to meet and requiring Tapp and DTI to provide "a complete accounting of the use and/or disbursement of all funds" paid by Rawlings. Rawlings contends she was not provided with any documentation at the meeting. Rawlings estimates that she paid Tapp and DTI more than $150,000 (including the 40% mark-up) for furniture and furnishings that she did not receive.

Tapp testified that he did not know how much Rawlings had paid him for furniture, nor could he testify as to what items had or had not been ordered from the manufacturers. Tapp relied on Wagner and other employees to maintain the books and records of the business. Wagner was responsible for sending out invoices, writing checks and making withdrawals and deposits from the DTI account. Both Wagner and Tapp had their personal living expenses paid for by DTI. Neither received a salary and neither could testify as to their exact salaries over the years.

DTI retained Kevin Fuqua, CPA, to provide accounting services for DTI. Fuqua received records from DTI including invoices from vendors, bank statements and general ledgers. From these records, Fuqua was able to determine the business' expenses. When there was insufficient information on a deposit or a withdrawal he put the item into a "suspense account." He would later get further information on the item from Tapp or Wagner. Missing information was also supplied when he received DTI's monthly bank statements. Fuqua testified that there were occasions where he did not know how to describe certain transactions on the books of DTI. While the books of DTI

4

were not kept in a manner in accordance with generally accepted accounting principles, he did have enough information to determine the cash flow of the business. Tapp's records were insufficient, however, for Fuqua to prepare tax returns for the business.

Tapp allowed Wagner to use DTI's accounts and credit card to pay her personal expenses. Tapp also knew that Wagner regularly withdrew cash from the company account. At one point, he suspected Wagner of stealing funds from DTI. Tapp was never able to prove that Wagner was stealing from DTI.

In March 2004, Fuqua met with Tapp and told him the business was in trouble.

Sometime in the spring of 2004, pursuant to an Order of the Jefferson Circuit Court all of the remaining inventory of DTI and other property stored at the premises were removed by the Jefferson County Sheriff. This Writ originated from a Judgment acquired by another creditor. Tapp testified that all of his business records were lost when they were left in haphazard piles by the Sheriff's Department and blew about the parking lot used by the business. Today, the only records that exist in any order are those sent to and maintained by Fuqua.

On July 21, 2004, Tapp filed his Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

On December 30, 2004, Rawlings filed a Complaint against Tapp objecting to his discharge pursuant to 11 U.S.C. §727(a)(2), §727(a)(3) and §727(a)(5). At trial, Rawlings' counsel moved to amend the Complaint pursuant to Fed. R. Civ. P. 15(b) to conform to the evidence at trial and assert a claim under §727(a)(4)(A). This motion was taken under submission by the Court.

**LEGAL ANALYSIS**

At the close of the first day of trial of this matter, Rawlings orally moved to amend her Complaint to assert a claim under §727(a)(4)(A). Rawlings based her motion on Tapp's testimony at trial that he did not review his bankruptcy Petition before he signed it. According to Rawlings, since the Petition states that he read the Schedules and that they were true and correct to the best of his knowledge, this constitutes a false oath pursuant to 11 U.S.C. §727(a)(4)(A).

Rawlings seeks to amend the pleadings to conform to the evidence under Fed. R. Bankr. R. 7015(b). The rule provides, in part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rawlings contends that the issues related to §727(a)(4)(A) were tried by implied consent because Tapp did not object to questioning on evidence related to his understanding of the Schedules or to possible inaccuracies in the Schedules. This, however, does not establish implied consent.

In Yellow Freight System, Inc. v. Martin, 954 F.2d 353, 358 (6th Cir. 1992), the Sixth Circuit held that implied consent is not established where one party introduced evidence relevant to an unplead issue and the opposing party failed to object. The record must indicate that the parties understand that the evidence was aimed at the unpleaded issue. Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. 1986). The Court does not find that Rawlings' questioning of Tapp on whether he read the Schedules before signing them, squarely put the issue of §727(a)(4)(A) into play. Rawlings admits that the questions were not asked during discovery. Since the evidence could have been relevant to the claims pleaded, the Court finds that it was not tried by implied consent and that it would be unfairly prejudicial to Debtor to allow the pleadings to be amended at this late stage.

Accordingly, Rawlings' oral motion to amend the pleadings to assert a claim under §727(a)(4)(a) is denied.

Rawlings' first Count objecting to Tapp's discharge is based on 11 U.S.C. §727(a)(2). This statute provides that a discharge will be denied where the debtor has with intent to hinder, delay or defraud a creditor, transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the debtor's estate within one year of the filing of the petition. Rawlings contends that Tapp placed his personal assets into DTI to prevent his creditors from attaching those assets. Rawlings failed to prove that any of Tapp's property was transferred to DTI.

Further, as to the $150,000 deposit made by Rawlings with Tapp, Debtor contends that Rawlings' claim must fail because the assets Debtor allegedly fraudulently transferred were not assets of Tapp or of the estate. Rather, Tapp contends that the $150,000 deposit always belonged to Rawlings and not the Debtor. The Court agrees that with respect to the $150,000 deposit, the §727(a)(2) claim fails as a matter of law because the transfer of property did not belong to the Debtor. In re Keeney, 227 F.3d 679, 683 (6th Cir. 2000).

Rawlings' claim, however, refers to more than just her deposit for the furnishings. Rawlings contends Tapp co-mingled his personal funds with his DTI account to prevent creditors from garnishing his personal accounts. Rawlings, however, failed to set forth any evidence of actual intent to defraud creditors by personal use of the DTI account by Tapp. Although the Court may infer a debtor's intent from circumstances surrounding objectionable conduct, Keeney, 227 F.3d at 683, evidence of Tapp's use of his business account does not prove his intent to defraud. In fact, the garnishment Rawlings relies upon was issued against Tapp and DTI. Thus, there was no benefit

7

to Tapp to use the DTI account as it was also subject to garnishment. In short, Rawlings failed to prove by a preponderance of the evidence that Tapp should be denied a discharge based on fraud.

Rawlings' next claim is asserted under 11 U.S.C. §727(a)(3). Under this statute, a debtor will be denied a discharge where he has "concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; . . ." The purpose of this provision of the Code is to ensure that the trustee and creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present. In re Trogdon, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990). The adequacy of debtor's records must be determined on a case by case basis. Considerations on this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice. Id. The burden of proving the inadequacy of the Debtor's records was on Rawlings. In re Adams, 31 F.3d 389, 394 (6th Cir. 1994).

There is no dispute that the bookkeeping of DTI was not perfect. Tapp relied on Wagner and Fuqua to take care of the books of the business. Fuqua met with Tapp and offered suggestions to better maintain the company's books and records. While Fuqua testified that he had to create a suspense account where he put transactions in until he received specific information on them, he could balance the account. He was able to determine and follow the cash flow of the company. There were times when he needed further explanation on transactions, but he was provided that information from Wagner and Tapp whenever he asked for it. Fuqua clearly testified that the books

and records of DTI were adequate to determine the financial condition of the business even though those books may not have been maintained according to generally accepted accounting principles. Finally, Tapp's testimony on the inadvertent loss of records during execution of the Writ was unrebutted.

The Court finds that Debtor met his obligation under §727(a)(3) sufficient to trace his financial history for a reasonable period, past to present. There is no requirement that the records be kept in any particular form. They were sufficient to reflect Tapp's finances and the cash flow of the company. The record does not support a denial of discharge under §727(a)(3).

Rawlings' next requests this Court to deny Tapp a discharge pursuant to 11 U.S.C. §727(a)(5). Under that provision, a debtor will be denied a discharge where the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. The initial burden of going forward with evidence on this claim is on the objecting party who must introduce more than merely an allegation that the debtor has failed to explain losses. Once the objector has introduced some evidence of the disappearance of substantial assets, the debtor must satisfactorily explain what happened. 6 Lawrence P. King Collier on Bankruptcy ¶727.08, (15th ed. rev.). A satisfactory explanation has not been definitively defined, but it must explain the losses or deficiency in such a manner as to convince the court of good faith and business like conduct. Id. The explanation need not be meritorious to be satisfactory. In re Nye, 64 B.R. 759, 762 (Bankr. E.D. N.C. 1986).

Rawlings contends denial of discharge pursuant to 11 U.S.C. §727(a)(5) is warranted because Debtor failed to explain what happened to more than $150,000 of Rawlings' funds paid to Debtor for the purchase of furniture. Debtor counters that the funds at issue were Rawlings' funds, not an

9

asset of DTI or Debtor and that even if the funds could be considered an asset of his, he adequately explained what happened to the funds.

The Court agrees that the funds at issue were not an asset of the Debtor. In fact, as Fuqua testified, deposits were considered a liability on the Debtor's books and records. Debtor, however, cannot escape liability by simply claiming the funds at issue were not his assets. They were placed in his possession and he had an obligation to account for their whereabouts. The record demonstrates what happened to the funds.

Wagner testified that she kept a record of the deposits paid to DTI, recorded what the payment was for, the method of payment and the date of the payment. The funds then went into an operating account and then into the business' checking account. The record established that money in this account was used in the business and to pay the living expenses of both Wagner and Tapp. Yet, there was no evidence whatsoever of extravagant spending by either Wagner or Tapp. Fuqua testified it was not improper for customer deposits to be placed into the company's operating account.

An objection to discharge based on 11 U.S.C. §727(a)(5) should not be sustained based on the substantive character of the explanation. In re Nye, 64 B.R. at 762, quoting W. Norton, 1 Norton Bankr. L. & Practice §27.20 at 27-39 (1982). "The court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was proper." Id. This is a question of fact and the explanation must convince the bankruptcy judge. In re Zell, 108 B.R. 615, 629 (Bankr. S.D. Ohio 1989).

The Court finds Wagner and Debtor's explanation of what happened to Rawlings' deposits satisfactory and credible in light of all of the testimony and totality of the circumstances. The Court

10

has little doubt the funds were placed into the DTI checking account and used to run the business and to pay Wagner and Tapp's personal expenses. The Court need not judge the propriety of the disposition, but finds the records sufficient to defeat Rawlings' claim under 11 U.S.C. §727(a)(5). Rawlings failed to overcome the basic bankruptcy principle that an honest debtor is entitled to a fresh start.

## **CONCLUSION**

For all of the above reasons, the Court finds in favor of Debtor Dennis Lee Tapp on the Complaint of Plaintiff Beverly S. Rawlings. A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DENNIS LEE TAPP | ) | CASE NO. 04-34647 |
| | ) | |
| Debtor | ) | |
| | ) | |
| B.S. RAWLINGS | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP NO.  04-3342 |
| | ) | |
| DENNIS LEE TAPP | ) | |
| | ) | |
| Defendant | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of the Defendant/Debtor Dennis Lee Tapp on the Complaint objecting to discharge of Plaintiff Beverly S. Rawlings.

This is a final and appealable Judgment.  There is no just reason for delay.